## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ADOLPH COORS CO.** *et al.***,**

    **Plaintiffs,**

    **v.**

**TRUCK INSURANCE EXCHANGE,**

    **Defendant.**

**Civil Action No.  04-2150 (RMU/JMF)**

### MEMORANDUM OPINION

This case was referred to me for resolution of a fee dispute related to plaintiffs' successful motion for remand.  Upon consideration of plaintiffs' statements of costs and attorneys' fees and defendant's responses, plaintiffs are hereby awarded fees and costs in the amount of $10,641.22.

### BACKGROUND

On December 13, 2004, defendant Truck Insurance Exchange ("Truck") removed this case from the District of Columbia Superior Court on the basis of diversity jurisdiction.  Adolph Coors Co. v. Truck Ins. Exch., No. Civ. A. 04-2150RMU, 2005 WL 486580, at *1 (D.D.C. Feb. 28, 2005).  Plaintiffs Adolph Coors Company and Coors Brewing Company (known collectively as "Coors"), filed a motion to remand on January 3, 2005.  Id.  The district court granted the motion to remand on February 28, 2005 because defendant failed to establish diversity of citizenship.  Id.  The district court also directed defendant to pay the costs and expenses plaintiffs incurred as a result of the removal.  Id.

### DISCUSSION

I.    Fee Awards Pursuant to 28 U.S.C. § 1447(c)

If a court decides to remand a case, that court "may require payment of just costs and any

actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. §

1447(c) (2000).  It should be noted that the reference to "actual expenses" does not limit the

ability of the court to conduct an inquiry into the reasonableness of the fees and costs.  On the

contrary, the court is "duty-bound to ensure that an award of attorneys' fees pursuant to § 1447(c)

is reasonable."  Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1134 (10th Cir. 2001).  As

the Huffman court explained, "unreasonably high fees are not "incurred" as a result of removal;

rather, excessive fee requests flow from, and accumulate by means of, improper billing practices.

. . ."  Id. at 1135.  Plaintiffs, therefore, are entitled to reasonable attorneys' fees and costs.

II.      Reasonableness of Attorneys' Fees

        Having determined that plaintiffs are entitled to reasonable attorneys' fees, this court

must now turn its attention to the appropriate measure of those fees.   This circuit has generally

employed the following three-part framework to evaluate the reasonableness of fee awards: ""(1)

determination of the number of hours reasonably expended in litigation; (2) determination of a

reasonable hourly rate or "lodestar"; and (3) the use of multipliers as merited.'"  Covington v.

District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (quoting Save Our Cumberland

Mountains, Inc. v. Hodel, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc) (citation omitted)).

"While the [c]ourt is empowered to exercise its discretion in determining the fee amount, the

plaintiff still bears the burden of establishing all elements of the requested fee award, including

entitlement to an award, documentation of appropriate hours, and justifications of the

reasonableness of the billing."  Smith v. District of Columbia, No. Civ. A.02-373, 2005 WL

914773, at *2 (D.D.C. Apr. 18, 2005) (citing Blum v. Stenson, 465 U.S. 886, 896 (1984)).

        A.      Hours Reasonably Expended

        Plaintiffs may satisfy their burden of demonstrating that the number of hours expended on

particular tasks was reasonable "by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 26 (D.D.C. 2004) (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982)). Plaintiffs in this case have submitted a detailed invoice for the hours expended as a result of the improper removal. Plaintiffs' Submission with Respect to Costs and Attorneys' Fees ("Pls'. Sub.").

In Defendant's Response to Plaintiff's Statement of Costs and Attorney's Fees ("Def's. Resp."), defendant argues that it was unreasonable for plaintiffs to spend 37.8 hours litigating the removal. Defendant begins by stating that the issue of diversity is "neither novel nor complex" and therefore does not justify the hours claimed by plaintiffs. Def's. Resp. at 4. Defendant then points out that, in plaintiffs' Statement of Points and Authorities, plaintiffs cited a Memorandum of Points and Authorities prepared by defendants for a two-year-old California case, Steadfast Insurance Co. v. Allianz Insurance Co. Id. This is significant, defendant claims, because the Steadfast memorandum "provided [p]laintiffs with a road map as to how to challenge a suit brought on diversity grounds. . . ." Id. "It is ironic," defendant concludes, "that after relying on [d]efendant's work product in Steadfast to defeat [d]efendant here, [p]laintiffs now seek $13,218.72 in fees and costs for the same." Id. at 4-5.

While the court agrees with defendant that there is a certain irony permeating the parties' recent filings, the court must differ with defendant as to its source. If the issue of diversity is "neither novel nor complex," as defendant claims, defendant should certainly have been able to avoid the improper removal of the case. In addition, it was *defendant's* failure to read its *own* "road map" that gave rise to the expenses they now contest as "unreasonable."

Finally, and perhaps most baffling of all, are defendant's inconsistent statements regarding the ultimate usefulness of the <u>Steadfast</u> memorandum.  In its response to plaintiffs' initial statement of costs, defendant states that the memorandum "addressed the identical issues" as plaintiffs' filing in the instant case, and "certainly should have saved [plaintiffs] substantial time in researching and drafting their motion."  Def's. Resp. at 4.  However, in <u>Defendant's Response to Plaintiff's Submission with Respect to Costs and Attorney's Fees</u> ("Def's. Resp. Sub."), defendant states that "[p]laintiffs added superfluous, and expensive, window-dressing to their motion by obtaining original briefs filed by Truck in an unrelated case in the U.S. District Court in the Southern District of California."  Def's. Resp. Sub. at 2.  Defendant goes on to state that "[t]his costly effort in no way advanced resolution of the issue in this case . . . and merely piled on additional costs beyond that which was necessary to make the argument."  <u>Id.</u>  In other words, defendant seems to claim that plaintiffs' compensation should be reduced because their reliance on the <u>Steadfast</u> memo should have saved them considerable time and expense, while in the same breath argues that any time plaintiffs spent procuring the memo was wasteful.

This court finds no merit in any of the above arguments.  Plaintiffs are entitled to seek any information that they believe will benefit their case, and argument in the alternative is standard practice.  However, the court does find that the number of partner hours spent on the matter (11.7), as compared to the number of associate hours spent on the matter (26.0), is excessive.  After all, a partner should be performing supervisory work and should not need to expend almost half of the time spent by an associate on a particular matter.  The court will therefore reduce the number of compensable partner hours by half, decreasing the time expended by Karen Bush[1] from 11.7 hours to 5.85 hours.

---

[1] Ms. Bush is a partner at Dickstein, Shapiro, Morin, & Oshinsky LLP ("Dickstein, Shapiro"), the firm that represented plaintiffs in this action.

B.      *Reasonableness of Costs*

Plaintiffs seek $737.72 in costs, and defendant objects to paying for any costs premised

on printing, duplication, and Westlaw/Lexis charges.  Defendant also objects to paying a courier

charge because all pleadings in this case were filed electronically.

First, defendant's assertion that "[l]egal research is part [of] the overhead for attorneys to

do their job" is incorrect. <u>See</u> Def.'s Resp. Sub. at 3.  In this jurisdiction, Westlaw and Lexis

charges are passed on to the client on a cost basis and have been reimbursed by the courts as

costs. <u>See, e.g.</u>, <u>Laffey v. Northwest Airlines</u>, 572 F. Supp. 354, 385-386 (D.D.C. 1983), <u>rev'd on</u>

<u>other grounds</u>,746 F.2d 4 (D.C. Cir. 1984 ).  The logic of doing so is unassailable.  Computerized

databases have achieved extraordinary efficiencies in performing legal research, as anyone old

enough to remember nearly going blind searching West's Dicennial Digest or Shepard's Citators

can attest.  It would be perverse to disallow costs for a device that lowers the hours that attorneys

would have to spend doing legal research if they did not use Westlaw or Lexis.

As for printing and duplication costs, both are traditionally passed on to the client upon

the theory that, but for the firm's performing these tasks, the printing and copying would have to

be outsourced to a commercial service like Kinko's, which would unquestionably charge for its

services.

Finally, while electronic filing has reduced the need for couriers to come to the

courthouse to deliver pleadings, defendant assumes that this is the cost for which plaintiffs seek

reimbursement.  But, plaintiffs may have incurred this cost for another, legitimate reason.  While

I could require additional information to determine whether this is the case, I have decided

instead to allow these costs given the nominal amount involved and the fact that Judge Urbina

asked for no more than a statement of costs.  *De minimis non curat lex.*

C.      *Reasonableness of Hourly Rates*

An attorney's usual billing rate, when "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" is presumptively reasonable.  Martini v. Fed. Nat'l Mortgage Ass'n, 977 F. Supp. 482, 485 (D.D.C. 1997) (citing Kattan v. District of Columbia, 995 F.2d 274, 278 (D.C. Cir. 1993) (citation omitted)).  Defendant submits that the *Laffey* Matrix, prepared by the U.S. Attorney's Office, should be used to determine the prevailing community rates for legal services of the type at issue in this case.  Def's. Resp. at 2-3; Def's. Resp. Sub. at 3.  Defendant also requests that, because the rates billed for both Karen Bush and Ryan Luft are higher than the *Laffey* rates, plaintiffs' compensation be reduced to *Laffey* levels.  Id.

The defendant's assertion that the court has some power to reduce what Dickstein, Shapiro actually charges its client to the *Laffey* rate, *i.e,* the rate that the United States Attorney's office has conceded it will deem reasonable when a fee-shifting statute applies, is unsupported by law, logic, or economics.

First, while use of the *Laffey* Matrix is standard in this circuit to determine the prevailing community rate for complex federal litigation under fee-shifting statutes, there is no circuit precedent requiring the application of *Laffey* rates to an award of fees pursuant to § 1447(c).  In Johnson-Brown v. 2200 M Street LLC, plaintiffs independently decided to bill for § 1447(c) attorneys' fees at *Laffey* rates, but only for the purposes of that itemization and as a matter of expedience.  Plaintiffs' Itemization of Costs and Expenses Pursuant to Court's Order of April 8, 2003 at 1-2, Johnson-Brown v. 2200 M Street LLC, 257 F. Supp. 2d 175 (D.D.C. 2003) (No. Civ. A. 02-1756).  The district court subsequently found the requested fees to be reasonable, but did not make any finding as to whether *Laffey* was the proper standard by which to measure

billing rates in § 1447(c) actions.  <u>Johnson-Brown v. 2200 M Street LLC</u>, No. Civ.A. 02-1756

(D.D.C. Apr. 24, 2003).  In addition, the <u>Johnson-Brown</u> plaintiffs explicitly reserved the right to

seek higher fees in other contexts.  Plaintiffs' Itemization of Costs and Expenses Pursuant to

Court's Order of April 8, 2003 at 1-2, <u>Johnson-Brown v. 2200 M Street LLC</u>, 257 F. Supp. 2d

175 (D.D.C. 2003) (No. Civ. A. 02-1756).  This would appear to support the proposition that the

prevailing rate in the community, absent voluntary reductions, is higher than those prescribed by

*Laffey*.

Second, the *Laffey* Matrix, published by the United States Attorney's Office, is a

concession by that office of what it will deem reasonable when a fee-shifting statute applies and

its opponent prevails and seeks attorneys' fees.  That concession relieves that office from having

to litigate the market rate in the hundreds of fee-shifting cases that it defends.  But, it does not

follow that the rate Dickstein, Shapiro charges its clients should not be allowed as the market rate

because the United States Attorney has advised the bar that it will not oppose fees sought that are

equal to or lesser than the *Laffey* rate.

Finally, the most fundamental economic analysis indicates that, all things considered,  the

rate that Dickstein, Shapiro charges its clients is the market rate.  In an efficient market, the price

that competitors charge is driven down to the lowest price any competitor charges.  In an efficient

legal market, therefore, Dickstein, Shapiro can profit and remain in business only if it charges no

more than the competition.  Thus, under this analysis, its actual rate *is* presumptively the market

rate for its services in this market. <u>See Nat'l Assoc. of Concerned Veterans v. Sec'y of Def.</u>, 675

F.2d 1319, 1324 (D.C. Cir. 1982)  ("Accordingly, the actual rate that applicant's counsel can

command in the market is itself highly relevant proof of the prevailing community rate.").  In the

absence of some reason to believe that for some unknown reason Dickstein, Shapiro can charge

rates higher than its competition and still prosper, I will apply their actual rates as the market rate.

   For the foregoing reasons, this court declines to apply the *Laffey* rates to the case at hand and will order the compensation of plaintiffs's attorneys according to their regular billing rates, which the court finds to be reasonable.

## CONCLUSION

   For the reasons presented above, plaintiffs are entitled to attorneys' fees and costs in the amount of $10,577.72.  The following chart demonstrates how the court arrived at this amount:

| | **Hours and Amounts Claimed** | **Hours and Amounts Awarded** |
|---|---|---|
| Karen Bush<br>Partner | 11.7 hours for a total of $5100.00<br>(6.6 hours @$425/hour = $2805.00<br>(5.1 hours @$450/hour = $2295.00 | 5.85 hours for a total of $2550<br>(3.3 hours @ $425/hour = $1402.50<br>(2.55 hours @ $450/hour = $1147.50 |
| Ryan Luft<br>Associate | 26.0 hours for a total of $7245.00<br>(16.5 hours @ $275/hour = $4537.50<br>(9.5 hours @ $285/hour = $2707.50 | Same ($7245.00) |
| Amy Spencer<br>Research Attorney | .3 hours @ $150/hour = $45.00 | Same ($45.00) |
| Pamela Acree<br>Technical Services Supervisor | .3 hours @ $105/hour = $31.50 | Same ($31.50) |
| Takeisha Bennett<br>Research Specialist | .4 hours @ $80/hour = $32.00 | Same ($32.00) |
| Costs | $737.72 | $737.72 |
| TOTALS | $13,191.22 | **$10,641.22** |

   An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: